IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KANSAS MASONIC FOUNDATION, INC.,

Plaintiff,

v.

Case No. 5:24-CV-04029-JAR

AUTO-OWNERS INSURANCE COMPANY,

Defendant.

## MEMORANDUM AND ORDER

Plaintiff Kansas Masonic Foundation, Inc. filed this removal action against Defendant Auto-Owners Insurance Company seeking a judicial declaration that it could recover employee dishonesty losses under an insurance policy issued by Defendant. This matter is now before the Court on the parties' cross-motions for summary judgment (Docs. 40, 42). For the reasons stated in more detail below, the Court denies Plaintiff's motion for summary judgment and grants Defendant's motion for summary judgment.

## I.  Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[3] A fact is "material" if, under

---

[1] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[2] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  An issue

of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the

non-moving party."[5]

The moving party initially must show the absence of a genuine issue of material fact and

entitlement to judgment as a matter of law.[6]  Once the movant has met this initial burden, the

burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine

issue for trial."[7]  The nonmoving party may not simply rest upon its pleadings to satisfy its

burden.[8]  Rather, the nonmoving party must "set forth specific facts that would be admissible in

evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9]

To accomplish this, the facts "must be identified by reference to an affidavit, a deposition

transcript or a specific exhibit incorporated therein."[10]  The non-moving party cannot avoid

summary judgment by repeating conclusory opinions, allegations unsupported by specific facts,

or speculation.[11]

"Where, as here, the parties file cross motions for summary judgment, we are entitled to

assume that no evidence needs to be considered other than that filed by the parties, but summary

---

[4] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

[7] *Anderson*, 477 U.S. at 256.

[8] *Id.*; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[9] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).

[10] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[11] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199) (10th Cir. 2006) (citations omitted).

judgment is nevertheless inappropriate if disputes remain as to material facts."[12]  Cross summary judgment motions should be evaluated as two separate motions.[13]  Just because the Court denies one does not require that it grant the other.[14]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[15]

## II.    Uncontroverted Facts

The following facts are either uncontroverted or stipulated.  The Court disregards conclusory allegations without specific supporting facts that do not have probative value[16] and "statements of mere belief."[17]  The Court does not consider legal arguments included in the parties' statements of facts.

Plaintiff is a not-for-profit corporation.  From July 1, 2015, to July 1, 2023, Plaintiff purchased business insurance from three providers: Cincinnati Insurance Company ("Cincinnati"), New Hampshire Insurance Company ("New Hampshire"), and Defendant.  Each policy included commercial crime coverage.  Each policy's policy periods were as follows:

---

[12] *James Barlow Fam. Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted).

[13] *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

[14] *Id.*

[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[16] *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) (citations omitted).

[17] *Argo v. Blue Cross Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (quoting *Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994)).

| Policy | Term |
|--------|------|
| Cincinnati Policy[18] | 7/1/2013–7/1/2016 |
| New Hampshire Policy 1[19] | 7/1/2016–7/1/2017 |
| New Hampshire Policy 2[20] | 7/1/2017–7/1/2018 |
| New Hampshire Policy 3[21] | 7/1/2018–7/1/2019 |
| New Hampshire Policy 4[22] | 7/1/2019–7/1/2020 |
| Auto-Owners Policy 1[23] | 7/1/2020–7/1/2021 |
| Auto-Owners Policy 2[24] | 7/1/2021–7/1/2022 |
| Auto-Owners Policy 3[25] | 7/1/2022–7/1/2023 |

On September 7, 2022, Plaintiff discovered that one of its employees had written and cashed numerous checks to herself without authority. The employee's scheme spanned several years. The employee was immediately terminated and eventually pled guilty to one count of bank fraud. Plaintiff's losses totaled $554,491.14.

On October 17, 2022, Plaintiff submitted to Defendant a claim for losses sustained due to the employee's dishonesty. Plaintiff claimed $138,336.14 in losses for checks cashed by the employee from March 19, 2019, to September 1, 2022. In response, Defendant paid $137,152.54 to Plaintiff for losses sustained from July 1, 2020, to September 7, 2022.

Next, Plaintiff submitted a claim to New Hampshire for losses sustained due to the employee's theft from July 1, 2019, to July 1, 2020. New Hampshire denied Plaintiff's claim as

---

[18] "Cincinnati Policy" refers to Policy Number EPP 019 83 80 issued by Cincinnati. Doc. 41-2.

[19] "New Hampshire Policy 1" refers to Policy Number 01-LX-011395277-0 issued by New Hampshire. Doc. 41-3.

[20] "New Hampshire Policy 2" refers to Policy Number 01-LX-011395277-1 issued by New Hampshire. Doc. 41-4.

[21] "New Hampshire Policy 3" refers to Policy Number 01-LX-011395277-2 issued by New Hampshire. Doc. 41-5.

[22] "New Hampshire Policy 4" refers to Policy Number 01-LX-011395277-3 issued by New Hampshire. Doc. 41-6.

[23] "Auto-Owners Policy 1" refers to Policy Number 204613-75896443-20 issued by Defendant. Doc. 41-7.

[24] "Auto-Owners Policy 2" refers to Policy Number 204613-75896443-21 issued by Defendant. Doc. 41-8.

[25] "Auto-Owners Policy 3" refers to Policy Number 204613-75896443-22 issued by Defendant. Doc. 41-9.

untimely because "[t]he extended period to discover a loss ended on July 1, 2021, or when the replacement crime coverage purchased went into effect in January 2020."[26]

On June 26, 2023, Plaintiff submitted another claim to Defendant for $410,000 under the "Loss Sustained During Prior Insurance" provisions of the Auto-Owners policies. Plaintiff sought insurance coverage for losses it sustained due to the employee's theft that occurred between August 28, 2015, and March 17, 2020. During this period, the employee wrote checks to herself in the following amounts, totaling $410,000:

> July 1, 2015 to July 1, 2016: $111,750
> July 1, 2016 to July 1, 2017: $120,500
> July 1, 2017 to July 1, 2018: $62,750
> July 1, 2018 to July 1, 2019: $69,000

On October 17, 2023, Defendant denied Plaintiff's claim. Plaintiff requested reconsideration of the denial, and Defendant responded that its prior payment of $137,152.54 in response to Plaintiff's first claim "represent[s] the maximum amount of its obligation under its insurance policies for these thefts and that it has no further payment obligations to [Plaintiff] for this occurrence."[27]

Each of the policies Defendant issued to Plaintiff contains Crime General Provisions. General Condition 4, Discovery Period for Loss, states: "We will pay only for covered loss discovered no later than one year from the end of the policy period."[28] General Condition 10, Loss Sustained During Prior Insurance,[29] states:

---

[26] Doc. 41-15 at 2.

[27] Doc. 41-19 at 2.

[28] Docs. 41-7 at 151; 41-8 at 153; 41-9 at 153.

[29] The Court refers to General Condition 10 and similar provisions in other insurance policies designed to provide coverage for losses sustained during the policy periods of prior insurance policies as "prior loss provisions."

    a. If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance provided:

      (1) This insurance became effective at the time of cancellation or termination of the prior insurance; and

      (2) The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

    b. The insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

      (1) This insurance as of its effective date; or

      (2) The prior insurance had it remained in effect.[30]

General Condition 15, Policy Period, states, in relevant part, that "[s]ubject to the Loss Sustained During Prior Insurance condition, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period."[31]

      On March 6, 2024, Plaintiff filed a petition for declaratory judgment against Defendant in the Shawnee County, Kansas District Court seeking a declaration that it could recover $410,000 in employee dishonesty losses from Defendant for losses sustained between August 28, 2015, and March 17, 2020.  Plaintiff's petition also sought attorneys' fees pursuant to K.S.A. § 40-256, costs, and expenses, claiming Defendant refused to pay Plaintiff's claim without just cause or excuse.  Defendant timely removed the action to this Court on April 12, 2024.  Plaintiff filed its

---

[30] Docs. 41-7 at 152; 41-8 at 154; 41-9 at 154.

[31] Docs. 41-7 at 153; 41-8 at 155; 41-9 at 155.

First Amended Complaint in this Court on June 25, 2024, seeking the same relief sought in the state court petition.

## III.    Discussion

Both parties move for summary judgment on two issues: (1) interpretation of Auto-Owners Policy 3's prior loss provision and Defendant's obligations thereunder, and (2) whether Plaintiff is entitled to attorneys' fees pursuant to K.S.A. § 40-256.

### A.  Interpretation of Auto-Owners Policy 3's Prior Loss Provision

Plaintiff claims that it is entitled to recover from Defendant $410,000 in losses it sustained due to its employee's theft that occurred between August 28, 2015, and March 17, 2020.  Plaintiff argues that although those losses occurred before it was insured by Defendant, it is entitled to recover under Auto-Owners Policy 3.  Specifically, Plaintiff contends that General Condition 10 of Auto-Owners Policy 3, the prior loss provision, requires Defendant to pay for losses that occurred during the policy periods of *any* of Plaintiff's prior insurance policies if certain factors are met.  Defendant argues that Auto-Owners Policy 3's prior loss provision only requires Defendant to pay for losses sustained during Auto-Owners Policy 2's policy period, the policy immediately preceding Auto-Owners Policy 3.  Thus, the principal issue is interpretation of Auto-Owners Policy 3's prior loss provision.  The Court agrees with Defendant's interpretation of the provision.

When exercising diversity jurisdiction, federal courts apply the law of the forum state in which they are sitting, including that state's choice of law rules.[32]  The parties agree that Kansas substantive law is controlling.[33]  Under Kansas law, interpretation of a written insurance contract

---

[32] *Tucker v. R.A. Hanson Co.*, 956 F.2d 215, 217 (10th Cir. 1992).

[33] Doc. 38 at 2.

is a question of law properly decided at the summary judgment stage.[34]  "If the state's highest court has not addressed the issue presented, the federal court must determine what decision the state court would make if faced with the same facts and issue."[35]  To do so, courts "consider state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority."[36]

In construing an insurance policy, a court must consider the instrument as a whole and interpret the policy language in such a way as to give effect to the intent of the parties.[37]  "If an insurance policy's language is clear and unambiguous, it must be taken in its plain, ordinary, and popular sense."[38]  However, if the policy language is ambiguous, it must be construed in favor of the insured.[39]  "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning."[40]  A court should not strain to find ambiguity where none exists.[41]  "The test in determining whether an insurance contract is ambiguous is not what the

---

[34] *Crist v. Hunan Palace, Inc.*, 89 P.3d 573, 576 (Kan. 2004).

[35] *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) (first citing *Farmers Alliance Mut. Ins. v. Bakke,* 619 F.2d 885, 888 (10th Cir.1980); and then citing *Hartford v. Gibbons & Reed Co.,* 617 F.2d 567, 569 (10th Cir.1980)).

[36] *Id.*

[37] *O'Bryan v. Columbia Ins. Grp.*, 56 P.3d 789, 792 (Kan. 2002).

[38] *Id.*

[39] *Brumley v. Lee*, 963 P.2d 1224, 1226 (Kan. 1998).

[40] *Catholic Diocese of Dodge City v. Raymer*, 840 P.2d 456, 459 (Kan. 1992) (citing *Patrons Mut. Ins. v. Harmon*, 732 P.2d 741, 746 (Kan. 1987)).

[41] *Cent. Sec. Mut. Ins. v. DePinto*, 681 P.2d 15, 17 (Kan. 1984).

insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean."[42]

Here, the parties have not cited, and the Court has not independently found, any Kansas cases interpreting a prior loss provision. Thus, the Court must predict how the Kansas Supreme Court would interpret such a provision.

Plaintiff can only recover under Auto-Owners Policy 3 if the requirements of General Conditions 4, 10, and 15, discussed above, are satisfied.[43] General Condition 4 states that Defendant will only pay for losses "discovered no later than one year from the end of the policy period."[44] Auto-Owners Policy 3's policy period was from July 1, 2022, to July 1, 2023. The losses at issue were discovered on September 7, 2022. Thus, General Condition 4 is satisfied.

General Condition 15 states that, subject to General Condition 10, Defendant will only pay for losses sustained through events occurring during the policy's policy period. Again, Auto-Owners Policy 3's policy period was from July 1, 2022, to July 1, 2023. The losses at issue occurred between August 28, 2015, and March 17, 2020, before the policy period went into effect. Thus, General Condition 15 precludes coverage under Auto-Owners Policy 3 unless General Condition 10 permits recovery.

The parties agree that General Condition 10 creates four requirements, and Defendant is only obligated to pay Plaintiff under this provision if all four requirements are satisfied. The parties agree that the first, second, and fourth requirements are: (1) the loss occurred during a period that "prior insurance" was in place; (2) the loss would have been covered under the prior policy had the time to discover the loss not expired; and (4) the loss would have been covered by

---

[42] *O'Bryan*, 56 P.3d at 793.

[43] Doc. 41-9 at 152–55.

[44] *Id.* at 153.

the current policy if it was in effect when the events causing the loss occurred.[45]  Defendant concedes that these requirements are satisfied.

The parties disagree on the third requirement.  Defendant contends that the third requirement is that "the policy under which coverage is sought . . . must have become effective at the time of the cancellation or termination of the prior insurance."[46]  Defendant argues that this requirement limits recovery to the single insurance policy that immediately preceded the Auto-Owners policy under which coverage is sought.  Therefore, Auto-Owners Policy 3's prior loss provision would limit recovery to Auto-Owners Policy 2; Auto-Owners Policy 2's prior loss provision would limit recovery to Auto-Owners Policy 1; and Auto-Owners Policy 1's prior loss provision would limit recovery to New Hampshire Policy 4.  Thus, according to Defendant, recovery for the losses at issue are not available under Auto-Owners Policy 3's prior loss provision because the losses did not occur during Auto-Owners Policy 2's policy period, which was from July 1, 2021, to July 1, 2022.

Plaintiff contends that the third requirement is that "the current policy was effective at the time of cancellation/termination of the prior policy."[47]  Plaintiff argues that the third requirement does not limit recovery to the immediately preceding insurance policy; instead, Plaintiff urges that it can recover under *all* of its prior policies if each one "terminated when the subsequent policy became effective."[48]  To support its argument, Plaintiff points to the phrase "any prior insurance" found in the prior loss provision.  Plaintiff contends that the phrase is not accompanied by any qualifying language that restricts coverage to just one prior policy.  Plaintiff

---

[45] *See* Doc. 41 at 17; Doc. 43 at 10.

[46] Doc. 47 at 3.

[47] Doc. 41 at 17.

[48] *Id.* at 18.

further contends that under Defendant's interpretation of the prior loss provision, General

Condition 10 is illusory and meaningless.  Plaintiff argues that:

> [T]here would never be "any prior insurance" coverage, as under [Defendant's] interpretation, no policy with an expired discovery period could be invoked by General Condition 10.  Instead . . . only losses discovered within the General Condition 4 discovery period would ever be covered by the Prior Loss Provision.  Put another way, if General Condition 10 was omitted from the policy entirely, the result would be the same—only losses occurring during the policy period would be covered.[49]

General Condition 10's third requirement stems from the following language in the prior

loss provision: "This insurance became effective at the time of cancellation or termination of the

prior insurance."  Because this language is clear and unambiguous, the Court will take it in its

plain, ordinary, and popular sense.  "This insurance" clearly refers to the insurance policy under

which coverage is sought, here, Auto-Owners Policy 3.  "Became effective at" clearly refers to

the time at which Auto-Owners Policy 3 became effective, July 1, 2022.  "The time of

cancellation or termination of the prior insurance" clearly refers to the time at which the prior

insurance policy that was effective when the losses occurred was cancelled or terminated.

Here, the losses at issue occurred between August 28, 2015, and March 17, 2020, and

spanned five insurance policies.  Cincinnati Policy terminated on July 1, 2016; New Hampshire

Policy 1 terminated on July 1, 2017; New Hampshire Policy 2 terminated on July 1, 2018; New

Hampshire Policy 3 terminated on July 1, 2019; and New Hampshire Policy 4 terminated on July

1, 2020.  None of these policies terminated on July 1, 2022, when Auto-Owners Policy 3 became

effective.  Only Auto-Owners Policy 2 terminated when Auto-Owners Policy 3 became effective,

---

[49] Doc. 41 at 20 (citation omitted).

but the losses at issue did not occur during Auto-Owners Policy 2's policy period. Thus, this requirement is not satisfied and coverage under the prior loss provision is not permitted.

The Court's interpretation of the prior loss provision does not render General Condition 10 illusory and meaningless. Nor does the coexistence of General Condition 4 and General Condition 10 create an ambiguity. There are instances where General Condition 10 would allow an insured to recover losses that would otherwise be unrecoverable without the provision. In fact, Defendant's payment to Plaintiff in response to Plaintiff's first insurance claim is an example. Plaintiff's first claim to Defendant included losses that occurred between July 1, 2020, and July 1, 2021, during Auto-Owners Policy 1's policy period. General Condition 4 would have prohibited recovery under Auto-Owners Policy 1 because the losses were discovered on September 7, 2022, more than one year from the end of Auto-Owners Policy 1's policy period which ended on July 1, 2021. However, Defendant used Auto-Owners Policy 2's prior loss provision to pay Plaintiff for those losses. Defendant could use Auto-Owners Policy 2's prior loss provision because General Condition 10's four requirements were satisfied, and the losses were discovered within a year of Auto-Owners Policy 2's policy period which ended July 1, 2022. Defendant would not have covered Plaintiff's losses that occurred between July 1, 2020, and July 1, 2021, if Defendant's policies did not include General Condition 10.

The Court's interpretation of General Condition 10 is consistent with how other courts have interpreted similar provisions. For example, in *American Auto Guardian, Inc. v. Acuity Mutual Ins.*, a Northern District of Illinois court interpreted a prior loss provision with language nearly identical to General Condition 10's.[50] There, the court held that the provision only

---

[50] 548 F. Supp. 2d 624 (N.D. Ill. 2008).

covered losses incurred during the effective dates of the immediately preceding policy.[51]  The

court explained that the coexistence of the discovery period provision and the prior loss

provision did not create an ambiguity and concluded that both provisions could be given full

effect.[52]

Similarly, in *Summit Real Estate Management, LLC v. Mid-Century Ins.*, the Oregon

Court of Appeals interpreted a prior loss provision with language nearly identical to General

Condition 10's and concluded that the provision only permitted recovery under the immediately

preceding policy.[53]  There, the insured made an argument similar to Plaintiff's that the court

should interpret "any prior insurance" to mean all prior insurance policies so long as there were

no gaps in coverage.[54]  But the court disagreed, explaining the following:

> Focusing on certain isolated text in paragraph h, we agree
> with Summit that the phrase "any prior insurance" is broad
> and without temporal limitation. *See generally Webster's
> Third New Int'l Dictionary* 97 (unabridged ed. 2002)
> (including, as definitions of "any," "unlimited in amount,
> quantity, number, time, or extent" and "up to
> whatever measure may be needed or desired").  But we do
> not interpret that phrase in isolation, removed from the
> remainder of the operative provision.  Contextually,
> subparagraph (1) imposes an explicit temporal limitation on
> what prior insurance is covered by paragraph h. That
> subparagraph limits the application of the paragraph to
> circumstances in which the "Optional Coverage" for
> employee dishonesty "became effective *at the time of
> cancellation or termination of the prior insurance*."[55]

---

[51] *Id.* at 629–30.

[52] *Id.* at 630.

[53] 445 P.3d 905 (Or. Ct. App. 2019).

[54] *Id.* at 909.

[55] *Id.* at 910.

Likewise, Plaintiff's argument that "the phrase 'any prior insurance' contains no qualifying language that confines the reach back on the referenced prior insurance" fails because the phrase is qualified by the other language in General Condition 10.

This case is unlike the cases Plaintiff compares it to.  For example, Plaintiff argues that this case is like *Armbrust International, Ltd. v. Travelers Casualty & Surety Co.*[56]  However, *Armbrust International* did not even address whether recovery under the prior loss provision was limited to the insurance policy that immediately preceded the policy under which recovery was sought.  Instead, the court simply held that the requirements for recovery under the provision were not satisfied because the policy under which recovery was sought overlapped with the immediately preceding policy, meaning that it did not become effective at the time of termination or cancelation of the prior policy.[57]

This case is also unlike *Cincinnati Ins. v. Hopkins Sporting Goods, Inc.*[58]  There, the insured argued, and the court agreed, that the prior loss provision covered losses that occurred during the policy period of the immediately preceding insurance policy.[59]  Here, Plaintiff argues that the prior loss provision covers losses that occurred during all of its prior insurance policies, so long as there were no gaps in coverage.  Further, the prior insurance at issue in *Cincinnati Ins.*, was issued by the same insurer under which recovery was sought, leading the court to explain that the prior loss provision was "a clear incentive for insureds to continue to purchase

---

[56] No. 04-212, 2006 WL 1207659 (D.R.I. May 1, 2006).

[57] *Id.* at *10.

[58] 522 N.W.2d 837 (Iowa 1994).

[59] *Id.* at 839.

coverage with Cincinnati."[60]  Here, the prior insurance policies in effect during the losses at issue were issued by insurers other than Defendant.

Plaintiff also compares this case to *Universal Underwriters Ins. Co. v. Ford*, but the language used in that prior loss provision was different and less precise than the language at issue here.[61]

Lastly, Plaintiff cites *Brigham Young University v. Lumbermens Mutual Casualty Co.*[62] There, the court allowed recovery for losses sustained during the policy periods of insurance policies in place before the policy immediately preceding the policy under which coverage was sought.  However, the insurer in that case, for whatever reason, did not appear to argue that the provision should be interpreted to limit coverage to the insurance policy immediately preceding the policy under which coverage was sought.  Thus, the court did not specifically address the issue.  None of these cases support Plaintiff's interpretation of General Condition 10.

The Court agrees with Defendant that the plain language of General Condition 10 limits recovery to the insurance policy that immediately preceded the Auto-Owners policy under which recovery is sought and predicts that this is how the Kansas Supreme Court would interpret the provision.[63]

---

[60] *Id.* at 839.

[61] 734 So. 2d 173, 178 (Miss. 1999) ("If EMPLOYEE DISHONESTY replaces a bond or policy carried by YOU (or YOUR predecessor in interest) that is no longer in effect . . . .").

[62] 965 F.2d 830 (10th Cir. 1992).

[63] To the extent Plaintiff argues that it is entitled to recovery pursuant to the Employee Dishonesty Endorsement (Doc. 41-9 at 44), the Court's analysis would be identical.  The "Discovery Period For Loss," "Loss Sustained During Prior Insurance," and "Policy Period" provisions in the Employee Dishonesty Endorsement use the same language as the identically titled provisions in the Crime General Provisions.

### B.  Auto-Owners Policy 1 and Auto-Owners Policy 2

Moreover, Plaintiff cannot recover under Auto-Owners Policy 1 nor Auto-Owners Policy 2's prior loss provisions.  As discussed above, Plaintiff cannot recover under Auto-Owners Policy 1's prior loss provision because General Condition 4 is not satisfied.  Again, the losses at issue were discovered on September 7, 2022, more than one year after Auto-Owners Policy 1's policy period ended on July 1, 2022.  Plaintiff cannot recover under Auto-Owners Policy 2's prior loss provision because the losses at issue occurred during the policy periods of policies that did not terminate when Auto-Owners Policy 2 became effective.  Recovery under Auto-Owners Policy 2's prior loss provision would only be available if the losses at issue occurred during Auto-Owners Policy 1's policy period.

### C.  Attorneys' Fees

Both parties also move for summary judgment on Plaintiff's request for attorneys' fees pursuant to K.S.A. § 40-256, which states, in relevant part, that:

> [I]n all actions . . . in which judgment is rendered against any insurance company . . . if it appear[s] from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action . . . .

Here, the Court has not rendered judgment against Defendant.  Therefore, Plaintiff is not entitled to recover attorneys' fees under K.S.A. § 40-256.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Summary Judgment (Doc. 40) is **denied**; Defendant's Motion for Summary Judgment (Doc. 42) is **granted**. The Clerk is directed to enter judgment in favor of Defendant and terminate the action.

**IT IS SO ORDERED.**

Dated: April 14, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE